**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RICHIE FOSTER LEVINE,

                                        Plaintiff,                    1:21-cv-1181 (BKS/CFH)

v.

NEW YORK STATE POLICE, NEW YORK STATE
POLICE TROOP B, JAMES W. MCMAHON, individually
and in his official capacity as Superintendent of the New
York State Police, DANA R. POIRIER, individually and in
his official capacity as New York State Police Investigator,
RENT-A-CENTER EAST, INC., successor-in-interest of
Rent-Way, Inc. doing business as Rent-A-Vision,

                                        Defendants.

**Appearances:**

*Plaintiff pro se:*
Richie Foster Levine
Hoosick Falls, NY 12090

*For Defendants New York State Police, New York State Police Troop B, James W. McMahon,*
*and Dana R. Poirier:*
Letitia James
Attorney General of the State of New York
Brenda T. Baddam
Assistant Attorney General, of Counsel
The Capitol
Albany, NY 12224

*For Defendant Rent-A-Center East, Inc.:*
Thomas B. Sullivan
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, NY 10019

Daniel JT McKenna
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Pro se plaintiff Richie Foster Levine brings this action asserting various claims under 42

U.S.C. §§ 1983, 1985(3) and state law arising out of his September 12, 1997 arrest for

misapplication of property. (Dkt. No. 1). Presently before the Court are (1) Defendant Rent-A-

Center East, Inc.'s ("Rent-A-Center") motion to compel arbitration and dismiss the claims

against it (Dkt. No. 8), and (2) Defendants New York State Police ("NYSP"), New York State

Police Troop B ("Troop B"), James W. McMahon, and Dana R. Poirier's (together, the "State

Defendants") motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) (Dkt. No. 21).[1] Plaintiff opposes both motions, and the parties have filed responsive

briefing. (Dkt. Nos. 10, 16, 22, 23, 29). For the following reasons, Rent-A-Center's motion to

compel arbitration is granted and the State Defendants' motion to dismiss is granted in part and

denied in part.

## II.    FACTS[2]

### A.    The Rental Purchase Agreement and Plaintiff's Conviction

In April 1997, Plaintiff, who was nineteen years old at the time, entered into a "Rental

Purchase Agreement" with Rent-A-Center[3] in Plattsburgh, New York. (Dkt. No. 1, ¶ 25; *see* Dkt.

---

[1] Although the State Defendants' notice of motion states that they seek dismissal under Fed. R. Civ. P. 12(c), (Dkt. No. 21), they have not answered the complaint, and their memorandum of law addresses the motion as one under Rule 12(b)(6), (Dkt. No. 21-1, at 6). The Court thus considers their motion under Rule 12(b)(6).

[2] The facts are drawn from the Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[3] The entity with which Plaintiff entered into the Rental Purchase Agreement in 1997 was "Rent-A-Vision." (Dkt. No. 1, ¶ 25). Plaintiff alleges that Rent-A-Vision was subsequently purchased by "Rent-Way, Inc.," which in turn was subsequently purchased by Defendant Rent-A-Center in February 2003. (*Id.* ¶ 8). Plaintiff alleges that Rent-A-Center is a successor in interest of Rent-A-Vision and "assumed Rent-A-Vision's liabilities." (*Id.* ¶¶ 50–54). For the sake of simplicity, the Court refers only to Rent-A-Center throughout this decision.

2

No. 21-2, at 4–5 (Rental Purchase Agreement)).[4] Pursuant to the Rental Purchase Agreement, Plaintiff rented merchandise on a weekly renewable basis and had the option of acquiring ownership rights in the rented property. (Dkt. No. 21-2, at 4–5). Rent-A-Center "attempted to serve a thirty-day demand for return of the merchandise on July 27, 1997 and to threaten criminal arrest . . . if the merchandise was not returned." (Dkt. No. 1, ¶ 26). Rent-A-Center then reported Plaintiff's breach of the Rental Purchase Agreement to New York State Police Troop B Investigator Dana Poirier, who "was advised to draft an accusatory instrument by Defendant [NYSP Superintendent James] McMahon's authorized supervisor at Troop B." (*Id.* ¶ 27).

Plaintiff alleges that Investigator Poirier and Rent-A-Center's manager met and that Rent-A-Center "specifically worked with Defendant Poirier outside the scope of Troop B to ensure that the civil debt owed to" Rent-A-Center "would be prosecuted." (*Id.* ¶ 28). Plaintiff alleges that Rent-A-Center had a "practice" to "force officers such as Defendant Poirier to be [its] civil debt collector." (*Id.* ¶ 28). Plaintiff further alleges that neither Investigator Poirier nor Rent-A-Center spoke to Plaintiff "at any time about his civil debt before his arrest." (*Id.* ¶ 30).

On September 4, 1997, Investigator Poirier drafted and signed an accusatory instrument accusing Plaintiff of Misapplication of Property, a Class A misdemeanor, in violation of New York Penal Law § 165.00. (*Id.* ¶ 29; *see* Dkt. No. 21-2, at 7). The Information states:

> Pursuant to rental agreement signed by [Plaintiff] on 4/10/97 the following items have been retained by [Plaintiff] and no payment has been received by complainant since 6/14/97; Queen Size Bed,

---

[4] The State Defendants submitted with their motion to dismiss: (1) the Rental Purchase Agreement dated April 9, 1997; (2) the Information accusatory instrument prepared by Investigator Poirier; (3) Rent-A-Center's demand for return of property; and (4) the March 4, 2021 order vacating Plaintiff's conviction. (Dkt. No. 21-2, at 3–14). These items are all referenced in the Complaint, (Dkt. No. 1, ¶¶ 25, 26, 29, 38, 39, 47), and Plaintiff does not contest the authenticity of the documents submitted by the State Defendants. Plaintiff has cited or referred to the documents in his opposition to the motion to dismiss. (Dkt. No. 29, at 2–3, 17). The Court will therefore consider these documents as incorporated by reference in or integral to Plaintiff's Complaint. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citations omitted). The Court notes that some text of the Rental Purchase Agreement appears to be omitted or is not legible.

> Mattress and frame, Total value $222.12. Certified letter of Demand
> for return of property sent to [Plaintiff] on 7/31/97.

(Dkt. No. 21-2, at 7). Plaintiff was arrested on September 12, 1997, by "Police Officer S. Guay on the authority of Officer Dana R. Poirier." (Dkt. No. 1, ¶ 31). Plaintiff was arraigned before the Plattsburgh Town Court that same day; his bail was set at $500 and he was remanded to Clinton County Jail for four days. (*Id.* ¶¶ 32–33). Plaintiff pled guilty to Misapplication of Property on September 30, 1997. (*Id.* ¶ 36). Plaintiff was sentenced to four days of time served and was ordered to pay Rent-A-Center restitution in the amount of $222.21. (*Id.* ¶ 37). Plaintiff alleges that he was not represented by counsel at his arraignment or guilty plea. (*Id.* ¶¶ 33–36).[5]

### B.    The Scope of Section 165.00

The Misapplication of Property subsection to which Plaintiff pled guilty provides:

> 1. A person is guilty of misapplication of property when, knowingly possessing personal property of another pursuant to an agreement that the same will be returned to the owner at a future time, . . . (b) he intentionally refuses to return personal property valued in excess of one hundred dollars to the owner pursuant to the terms of the rental agreement provided that the owner shall have made a written demand for the return of such personal property in person or by certified mail . . . and he intentionally refuses to return such personal property for a period of thirty days after such demand has been received or should reasonably have been received by him.

N.Y. Penal Law § 165.00(1)(b); *see id.* (describing the required contents of the written demand). Section 165.00 states that the term "rental agreement" as used in subsection (1)(b) "shall be defined as in" New York General Business Law § 399-w(1). *Id.* § 165.00(1)(c). General

---

[5] Plaintiff submitted several documents in opposition to the State Defendants' motion to dismiss, including the "arraignment memorandum," the warrant of arrest, the town court's case history report, and his record of incarceration, showing that he was incarcerated at the Clinton County jail from September 12 to September 16, 1997. (Dkt. No. 29-1). The State Defendants did not file a reply memorandum, and have not indicated whether they object to the consideration of these records. In any event, because the Court has assumed the truth of the well-pled facts in the Complaint concerning Plaintiff's arrest, arraignment, incarceration, and lack of counsel, (*see, e.g.*, Dkt. No. 1, ¶¶ 31–37), any consideration of the submissions would not change the outcome and the Court does not consider these submissions.

Business Law Section 399-w, in turn, defines rental agreement as "the total legal obligation that results from a written rental contract between a person and the owner for the rental of personal property." N.Y. Gen. Bus. Law § 399-w(1)(c). However, Section 399-w "shall not apply to" "rental purchase agreements as regulated by article eleven of the personal property law." *Id.* § 399-w(3). A "Rental-purchase agreement" under Article 11 of New York Personal Property law "means an agreement for the use of merchandise by a consumer for personal, family, or household purposes, for an initial period of four months or less, that is renewable with each payment after the initial period and that permits the lessee to become the owner of the property." N.Y. Pers. Prop. Law § 500(6) (1986).

Based on the above, Plaintiff asserts that he and Rent-A-Center entered into a "Rental Purchase Agreement" which is not subject to criminal prosecution under Penal Law § 165.00. (Dkt. No. 1, ¶¶ 38–46 (first citing *People v. Sagesse*, 816 N.Y.S.2d 902 (Watertown City Ct. 2006), and then citing *People v. Quinn*, 135 N.Y.S.3d 618 (Gloversville City Ct. 2020))). Both *Sagesse* and *Quinn* concluded that the New York "legislature clearly intended to preclude from criminal prosecution[] an alleged breach of a 'Rental-Purchase agreement' governable under Article 11 of the Personal Property Law." *Quinn*, 135 N.Y.S.3d at 620–21 (citing *Sagesse*, 816 N.Y.S.2d at 906).

### C.     The Vacatur of Plaintiff's Conviction

On January 21, 2021, Plaintiff filed a motion to vacate his 1997 conviction pursuant to New York Criminal Procedure Law § 440.10(1)(a) on the ground that "no crime occurred." (Dkt. No. 1, ¶ 47). On consent of the Clinton County District Attorney, the Plattsburgh Town Court vacated Plaintiff's conviction on March 4, 2021. (*Id.*; *see* Dkt. No. 21-2, at 13 (order to vacate judgment)).

Plaintiff alleges that he has "suffered 23 years with a conviction for a crime he did not commit." (Dkt. No. 1, ¶ 65). Plaintiff further alleges that the "damage of 23 years of employment denials based on [his] 1997 conviction cost him numerous jobs, including a position at the New York City Housing Authority." (*Id.* ¶ 188).

Plaintiff's Complaint asserts eleven claims for relief: (1) violation of his First Amendment freedom of association, (2) violation of his Fourth Amendment rights for arrest without probable cause, (3) violation of his Sixth Amendment right to counsel, (4) violation of his Fourteenth Amendment Equal Protection rights, (5) false arrest, (6) malicious prosecution, (7) *Monell* liability, (8) conspiracy under Section 1985(3), (9) negligence, (10) "cat's paw theory," and (11) denial of his fair trial rights. (*Id.* ¶¶ 97–191).

## III.    RENT-A-CENTER'S MOTION TO COMPEL ARBITRATION

Defendant Rent-A-Center moves to compel Plaintiff to arbitrate his claims against it and asks that the Court dismiss Plaintiff's claims against Rent-A-Center pending arbitration. (Dkt. No. 8).

### A.    The Arbitration Agreement[6]

On March 17, 2015, Plaintiff entered into a "Rental-Purchase Agreement" numbered "faq01352" with Acceptance Now, an affiliate entity of Rent-A-Center, for the rental of bedroom furniture and a service and warranty plan. (Dkt. No. 8-2, at 5, 7). Plaintiff and Rent-A-Center simultaneously executed a "Consumer Arbitration Agreement" (the "Agreement"). (*Id.* at 7–11; *see also id.* at 5 (Rental-Purchase Agreement providing that an arbitration agreement forms part

---

[6] In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003), which requires consideration of extraneous materials, including "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (internal quotation marks omitted).

of the agreement)). The Agreement states that it is governed by the Federal Arbitration Act ("FAA") and provides that, except as otherwise provided, "you and RAC hereby agree that, in the event of any dispute or claim between us, either you or RAC may elect to have that dispute or claim resolved by binding arbitration on an individual basis in accordance with the terms and procedures set forth in this Agreement." (*Id.* at 7). As relevant here, the "**What Claims Are Covered**" section of the Agreement provides:

> You and RAC agree that, in the event of **any dispute or claim between us**, either you or RAC may elect to have that dispute or claim resolved by binding arbitration. This agreement to arbitrate is intended to be interpreted as broadly as the FAA allows. Claims subject to arbitration include, but are not limited to:
> - claims arising under, arising out of, or relating in any way to any Consumer Contract entered into between you and RAC at any time . . . ;
> - claims that arose before the execution of this Agreement or any current or prior Consumer Contract between you and RAC . . . ;
> - claims that arise after the termination of any Consumer Contract between you and RAC;
> - claims that are based on any legal theory whatsoever, including negligence, breach of contract, tort, fraud, misrepresentation, trespass, the common law, or any statute, regulation or ordinance; . . . [and]
> - except as specified in Paragraph (D) below, any and all disputes relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to, any contention that all or any part of this agreement to arbitrate is void or voidable.

(*Id.* at 7–8). The Agreement also provides that it "shall survive the termination of any Consumer Contract you entered into with RAC." (*Id.* at 10).

The Agreement gave Plaintiff the right to reject the Agreement by sending a written rejection notice containing certain information. (*Id.* at 7). Plaintiff did not exercise his right to reject the Agreement. (*Id.* at 3). Plaintiff failed to make the payments required under the 2015

Rental-Purchase Agreement and did not return the rented merchandise. (*Id.*). Rent-A-Center closed Plaintiff's account as a write-off on March 1, 2016. (*Id.* at 13).

### B. Applicable Standards

The FAA "is an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ross v. Am. Exp. Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (citation omitted); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."). Section 4 of the FAA allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition to any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In deciding a motion to compel, courts apply a "standard similar to that applicable for a motion for summary judgment." *Bensadoun*, 316 F.3d at 175. "Accordingly, the Court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561–62 (S.D.N.Y. 2013). Where such a showing is made, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

"In deciding whether a dispute is arbitrable," the Court must determine "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (citation omitted). The party seeking to compel arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order) (citing, inter alia, *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945)). The moving party is not required to "show initially that the agreement would be *enforceable*, merely that one existed." *Id.* (citing *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, 992 F. Supp. 378, 381 (S.D.N.Y. 1998)). The burden then shifts to the party seeking to avoid arbitration to show that the agreement is "inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)).

**C.     Discussion**

**1.     The Existence of an Agreement to Arbitrate**

Rent-A-Center moves to compel arbitration based on the "Consumer Arbitration Agreement" that Rent-A-Center and Plaintiff signed on March 17, 2015. (Dkt. No. 8-1). Plaintiff does not dispute the existence of the Agreement, that he signed it, or that he did not exercise his right to reject the Agreement. (*See* Dkt. No. 10, ¶ 7 ("There is no dispute that the arbitration agreement Defendant RAC puts forth was signed on March 17, 2015.")).[7] Accordingly, the

---

[7] Plaintiff also does not dispute that the FAA governs the Agreement as a "contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2; *see Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995) (interpreting the language "involving commerce" "as broadly as the words 'affecting commerce'"). Furthermore, Marc Tuckey, Rent-A-Center's records custodian, asserts that the "funding for the March 17, 2015 transaction came from sources outside of the State of New York, where the Consumer Contract was executed." (Dkt. No. 8-2, at 3; *see also id.* at 2 (stating that Rent-A-Center is headquartered in Texas, "operates stores throughout the United States," and "rents and sells goods that are transported across state lines")).

Court finds that Rent-A-Center has met its burden of demonstrating that there is no genuine dispute "that an agreement to arbitrate was made." *Hines*, 380 F. App'x at 24.

### 2. The Applicability of the Agreement to Plaintiff's Claims

Rent-A-Center next argues that "Plaintiff's claims are clearly covered under the sweeping language of the Arbitration Agreement, and Plaintiff cannot rebut the presumption that his claims are arbitrable." (Dkt. No. 8-1, at 14–16). Rent-A-Center further argues that, pursuant to the Agreement's so-called delegation clause, any dispute about the applicability of the Agreement to Plaintiff's claims must itself be submitted to arbitration. (*Id.* at 16–18). Plaintiff argues that (1) the rental purchase agreement he signed in April 1997 had no arbitration agreement and (2) the 2015 Agreement does not apply to the events underlying his claims which occurred "almost 18 years before the signing of the 2015 agreement." (Dkt. No. 10, ¶ 8; *see id.* ¶ 9 (arguing that the Court "cannot enforce a contract dated 2015 that did not exist at all in 1997")).

Where a valid agreement to arbitrate exists, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular claim should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 898–99 (2d Cir. 2015) (quoting *AT&T Techs.*, 475 U.S. at 650) (brackets omitted); *see also Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (noting that a "broad" arbitration agreement creates a "presumption that the claims are arbitrable"). When interpreting an arbitration agreement, as in any other case involving the interpretation of a contract, "the parties' intentions control." *Holick*, 802 F.3d at 395 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)).

The Court cannot say with "positive assurance" that the Agreement is "not susceptible of an interpretation that covers" Plaintiff's claims against Rent-A-Center. *Benihana*, 784 F.3d at

898–99. The Agreement's language is broad and gives each party the right to elect for the arbitration of "**any dispute or claim between us**." (Dkt. No. 8-2, at 7). The Agreement more specifically provides that it covers "claims arising under, arising out of, or relating in any way to *any* Consumer Contract entered into between you and RAC *at any time*," and claims "that arose before the execution of this Agreement or any current *or prior* Consumer Contract." (*Id.* (emphases added)). Thus, because Plaintiff's claims against Rent-A-Center undisputedly relate to a Consumer Contract entered into between the parties in 1997, the plain language of the Agreement appears to cover Plaintiff's claims. Neither of Plaintiff's arguments as to why the Agreement does not encompass his claims persuades the Court to the contrary.

Plaintiff first argues that his claims all "concern[] the April 9, 1997 rental purchase agreement," which Plaintiff asserts "does not contain an arbitration clause." (Dkt. No. 10, ¶¶ 8–9). Plaintiff generally argues that the 2015 Agreement is "inapplicable" to his pleadings and that "it is impossible for the court to find that [the Agreement] encompasses the 1997 constitutional claims at issue." (*Id.* ¶¶ 12, 14). In reply, Rent-A-Center notes that Plaintiff's Complaint "expressly alleges that at least some of his claims accrued" after he entered into the 2015 Agreement and argues that, in any event, the Agreement's broad and plain language "covers claims that predated entry into the 2015 Consumer Contract." (Dkt. No. 16, at 7–8). The Court agrees with Rent-A-Center: the fact that the claims at issue arose before the execution of an agreement to arbitrate does not necessarily take the claims outside the scope of that arbitration agreement. *See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999) (rejecting argument that claims premised on conduct taking place in 1993 fell outside of the scope of a 1994 arbitration agreement, and noting that doubts about the scope of an arbitration agreement should be "resolved in favor of coverage"). As discussed

above, the plain language of the Agreement covers claims relating to any Consumer Contract between the parties that was entered into at any time, including claims arising before the execution of the Agreement. (Dkt. No. 8-2, at 7).

Second, Plaintiff argues that his Section 1983 and 1985 claims are "safeguarded constitutional rights" that must be adjudicated by a court and are not subject to arbitration. (Dkt. No. 10, ¶¶ 15–25). However, the cases Plaintiff cites did not hold that Section 1983 claims are not subject to arbitration. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59–60 (1974) (holding that an employee's decision to pursue "his remedy under the grievance-arbitration clause of a collective-bargaining agreement" did not preclude him from also bringing a cause of action under Title VII); *McDonald v. City of West Branch*, 466 U.S. 284, 292 (1984) (holding that "an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement" does not have preclusive effect in a subsequent Section 1983 action). The Supreme Court has clearly stated that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *see id.* at 35 (enforcing agreement to arbitrate ADEA claims and distinguishing both *Alexander* and *McDonald*). The *Gilmer* Court stated: "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 26 (brackets and citation omitted). Plaintiff has not pointed to any authority indicating that Congress so intended with respect to Section 1983 and 1985 claims.

Additionally, the Court concludes that, to the extent there is any dispute about whether the Agreement applies to Plaintiff's claims, that dispute itself must be decided by an arbitrator due to the Agreement's "delegation clause." Generally, the issue of arbitrability is one for

judicial determination "unless the parties clearly and unmistakably provide otherwise." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (citation omitted); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (recognizing that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether . . . their agreement covers a particular controversy"). Here, the Agreement provides, with an exception not relevant here, that "any and all disputes relating to the interpretation, applicability, enforceability or formation of this Agreement" are subject to arbitration. (Dkt. No. 8-2, at 7–8). This delegation clause, the validity of which Plaintiff does not contest, "clearly and unmistakably" indicates that any dispute about the applicability of the Agreement to Plaintiff's claims must be arbitrated. *See, e.g.*, *Corpus Christi Indep. Sch. Dist. v. AMRISC, LLC*, No. 19-cv-301, 2019 WL 2051696, at *3–4, 2019 U.S. Dist. LEXIS 78699, at *7–12 (E.D.N.Y. May 9, 2019) (granting motion to compel arbitration where the agreement contained a valid delegation clause); *Brown v. RAC Acceptance East, LLC*, 303 Ga. 172, 175–76 (2018) (enforcing similar Rent-A-Center delegation provision); *see also NASDAQ OMX Grp.*, 770 F.3d at 1031 (noting that the "clear and unmistakable" provision is satisfied where "a broad arbitration clause expressly commits all disputes to arbitration," because "*all* disputes necessarily includes disputes as to arbitrability").

In sum, the Court finds that Rent-A-Center has met its burden of showing that Plaintiff must be required to arbitrate his claims against it.

### 3. Plaintiff's Motion to Dismiss Rent-A-Center's Motion and Request for Sanctions

After the briefing on Rent-A-Center's motion was complete, Plaintiff filed a "Motion to Dismiss Pursuant to 12(b)(1) and 12(b)(6) Defendant Rent-A-Center East, Inc.'s Motion to Compel Arbitration" and for "Issuance of Sanctions and Contempt for Violation of Discharge Pursuant to Section 11 U.S.C. 524(a)(2)." (Dkt. No. 22). Plaintiff argues that, because he filed

for bankruptcy in 2016 and the debt he owed to Rent-A-Center was discharged, Rent-A-Center's motion to compel arbitration violates 11 U.S.C. § 524(a)(2). (*See generally* Dkt. No. 22-1; Dkt. No. 22-2, at 4–5 (discharge order dated August 19, 2016)). Section 524 provides that a Chapter 7 bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such [discharged] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Plaintiff seeks punitive damages and sanctions on the ground that Rent-A-Center's motion to compel is frivolous. (Dkt. No. 22-1, ¶¶ 18–22). Rent-A-Center responds that it is well-settled that a bankruptcy discharge "does not render unenforceable a broad arbitration agreement covering post-discharge claims unrelated to the bankruptcy or the collection of the debt." (Dkt. No. 23, at 7–8 (collecting cases)).[8]

As the cases Rent-A-Center cites indicate, "many courts have held a bankruptcy discharge does not render a valid arbitration agreement unenforceable." *Crooks v. Wells Fargo Bank, N.A.*, 312 F. Supp. 3d 932, 938 (S.D. Cal. 2018) (collecting cases); *see id.* (noting that a bankruptcy discharge "extinguishes only the personal liability of the debtor" (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991))). Furthermore, the Agreement in this case specifically provides that it "shall survive the termination of any Consumer Contract you entered into with RAC." (Dkt. No. 8-2, at 10). Finally, the Court concludes that Rent-A-Center's motion does not implicate Section 524(a)(2) because Rent-A-Center's actions were not "commence[d]" or "continu[ed]" "to collect, recover or offset" Plaintiff's discharged debt. 11 U.S.C. § 524(a)(2). Rather, this case implicates only Plaintiff's Section 1983 and 1985 claims. *Cf. Crooks*, 312 F. Supp. 3d at 938–39 ("The arbitration provision is at issue due to Plaintiff's [Fair Credit

---

[8] Rent-A-Center also argues that Plaintiff's motion is procedurally improper and should be denied on that basis. (Dkt. No. 23, at 6). In deference to Plaintiff's pro se status, the Court has considered his submission, as it has Rent-A-Center's response thereto.

Reporting Act] claim, not because Defendant is attempting to collect a debt that has been discharged.").

Therefore, Rent-A-Center's motion to compel is not frivolous, and the Court denies Plaintiff's request for punitive damages and sanctions.

### 4.      Whether a Stay or Dismissal Is Warranted

Finally, the Court must determine whether to stay or dismiss the proceedings against Rent-A-Center pending arbitration. It is well-settled that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015); *see* 9 U.S.C. § 3. Where neither party requests a stay, the Court has discretion in determining whether to stay or dismiss the case pending arbitration. *Worthington v. JetSmarter, Inc.*, No. 18-cv-12113, 2019 WL 4933635, at *8, 2019 U.S. Dist. LEXIS 173571, at *22 (S.D.N.Y. Oct. 7, 2019); *Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (noting that Section 3 of the FAA did not require the district court to stay the proceedings where no party requested a stay).

Here, neither party requested a stay of proceedings, and Rent-A-Center expressly requests that the proceedings against it be dismissed. Other than asserting that the Court has discretion to dismiss, Rent-A-Center makes no argument as to why the Court should exercise that discretion in these circumstances. *Cf. Worthington*, 2019 WL 4933635, at *8, 2019 U.S. Dist. LEXIS 173571, at *21–22 (staying the matter pending arbitration where "Defendants' bare assertion fail[ed] to persuade the Court that it should dismiss, instead of stay"). Courts in this Circuit have recognized "several reasons for staying, instead of dismissing, cases pending arbitration," including that a stay may "promote expeditious resolution of" a dispute. *Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018); *see Katz*, 794 F.3d

at 346 (noting that the FAA "denies the right to an immediate appeal from an interlocutory order that compels arbitration or stays proceedings," while the dismissal of an arbitrable matter is appealable). Accordingly, the Court exercises its discretion to stay proceedings against Rent-A-Center pending arbitration.

## IV.    STATE DEFENDANTS' MOTION TO DISMISS

### A.    Standard of Review

The State Defendants move to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See generally* Dkt. No. 21-1). To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that has been filed pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

### B.      Discussion

#### 1.      Statute of Limitations

The State Defendants first seek dismissal of all of Plaintiff's claims as barred by the

applicable statute of limitations, arguing that Plaintiff's claims "began to accrue on September

12, 1997," when Plaintiff was arrested and knew or had reason to know that his constitutional

rights were violated. (Dkt. No. 21-1, at 7–9). Plaintiff responds that his claims did not accrue

until his conviction was vacated on March 4, 2021, and are therefore timely. (Dkt. No. 29, at 4–

5).

The parties agree that Plaintiff's Section 1983 and 1985 claims are subject to a three-year

statute of limitations. *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (Section 1983

claims); *Allen v. Antal*, 665 F. App'x 9, 12 (2d Cir. 2016) (summary order) (Section 1985

claims) (citations omitted). While "state law supplies the statute of limitations for claims under

[Sections 1983 and 1985], federal law determines when a federal claim accrues." *Connolly v.*

*McCall*, 254 F.3d 36, 41 (2d Cir. 2001). Generally, a federal claim accrues "when the plaintiff

knows or has reason to know of the harm." *Id.* (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d

Cir. 1994)). Stated differently, a claim accrues when "the plaintiff has 'a complete and present

cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Allen*, 665 F. App'x at

12 (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

Here, as Plaintiff points out, at least some of his claims did not accrue until his conviction

was vacated on March 4, 2021. It is well-settled, for example, that a malicious prosecution claim

"does not accrue until an underlying criminal proceeding terminates in [the] plaintiff's favor."

*Bailey v. City of New York*, 79 F. Supp. 3d 424, 447 (E.D.N.Y. 2015) (citing *Heck v. Humphrey*,

512 U.S. 477, 489 (1994)). More generally, if "success on a section 1983 claim would impugn

the validity of an existing conviction, the accrual date is delayed until the conviction is set

aside." *Id.*; *see also Dukes v. City of Albany*, 289 F. Supp. 3d 287, 394–95 (N.D.N.Y. 2018)

("Broadly stated, *Heck* precludes a [plaintiff] from using § 1983 as a vehicle to obtain damages

where success on the particular constitutional claims alleged would necessarily require the

plaintiff to prove the unlawfulness of his conviction or confinement."). It is therefore clear that,

at a minimum, Plaintiff's malicious prosecution claim is not time-barred. Because the parties

have not briefed whether Plaintiff's success on any other claims in this case would have

impugned the validity of Plaintiff's conviction prior to its vacatur or, more generally, when each

of Plaintiff's claims accrued, the Court denies the State Defendants' motion to dismiss Plaintiff's

claims as time-barred without prejudice to raising the defense at a later time.

### 2. Sovereign Immunity

The State Defendants next argue that Plaintiff's claims against NYSP, Troop B, and

Superintendent McMahon and Investigator Poirier in their official capacities must be dismissed

as barred by the Eleventh Amendment. (Dkt. No. 21-1, at 9–10). Plaintiff responds that these

claims are not barred because he seeks "declaratory and injunctive relief" "against future First

Amendment harm, the right to associate and enter a civil contract." (Dkt. No. 29, at 5–11; *see id.*

at 7 (arguing that he has alleged that "Defendant Officers have and continue to act

unconstitutionally" and that he "has for 24 years been afraid the state would prosecute him again

for entering a civil contract with private businesses")).

Although Plaintiff did not request specific injunctive or declaratory relief in his

Complaint, in light of Plaintiff's pro se status and his arguments in opposition to the motion to

dismiss, the Court considers whether such relief might be available. The Eleventh Amendment

bars suits against a state unless Congress has abrogated the state's sovereign immunity, the state

has consented to suit, or the plaintiff is "seeking injunctive relief against a state official for an

ongoing violation of law or the Constitution." *N.Y. State Corr. Officers & Police Benevolent*

*Ass'n, Inc. v. New York*, 911 F. Supp. 2d 111, 124–25 (N.D.N.Y. 2012) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Here, the Court concludes that Plaintiff has not alleged any facts plausibly suggesting that the wrongdoing alleged in the Complaint is ongoing so as to warrant the issuance of prospective injunctive relief or a declaratory judgment that his rights are currently being violated. *Cf. Olivo v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 17-cv-357, 2017 WL 2656199, at *3, 2017 U.S. Dist. LEXIS 94384, at *10 (N.D.N.Y. June 20, 2017). Although Plaintiff argues that the State Defendants "continue" to act unconstitutionally, he alleges no facts suggesting that the State Defendants have arrested him again in connection with a rental purchase agreement or otherwise burdened his alleged "First Amendment right to enter civil contracts." (Dkt. No. 29, at 7). Plaintiff's conclusory assertions are insufficient to invoke the exception for prospective injunctive relief to sovereign immunity under the *Ex Parte Young* doctrine. *Cf. Tiraco v. N.Y. State Bd. of Educ.*, 963 F. Supp. 2d 184, 193 n.8 (E.D.N.Y. 2013) (finding that the plaintiff's "conclusory allegations that the State Board 'will continue to deprive candidates of their right to obtain a place on the ballot'" was insufficient to invoke *Ex Parte Younger* where the complaint's "nonconclusory factual allegations . . . [were] limited to the State Board's past failure[s]").

Moreover, it is well-established that, absent one of the three exceptions laid out in *Ex Parte Young*, the Eleventh Amendment bars suits against states, state agencies, and state officials sued in their official capacities. *See Keitt v. New York City*, 882 F. Supp. 2d 412, 447 (S.D.N.Y. 2011). Plaintiff's claims against the NYSP and Troop B, which are state agencies, are therefore barred by the Eleventh Amendment. *See Linder v. N.Y. State Police*, No. 07-cv-371, 2007 WL 1288027, at *1, 2007 U.S. Dist. LEXIS 31916, at *4 (N.D.N.Y. Apr. 30, 2007) ("[T]he New York State Police is an agency of the State and, as such, is entitled to sovereign immunity under

the Eleventh Amendment.").[9] Finally, because a suit against a state official in his official

capacity is deemed to be a suit against the state, *see Lore v. City of Syracuse*, 670 F.3d 127, 164

(2d Cir. 2012), Plaintiff is barred from seeking monetary damages from Superintendent

McMahon or Investigator Poirier in their official capacities.[10]

In sum, the Court grants the State Defendants' motion to dismiss Plaintiff's claims

against the NYSP, Troop B, and Superintendent McMahon and Investigator Poirier in their

official capacities.

### 3.    First Amendment Claim

The State Defendants move to dismiss Plaintiff's First Amendment claim, arguing that

Plaintiff has not plausibly alleged that his First Amendment rights were substantially or

significantly burdened and that any alleged interference with Plaintiff's First Amendment rights

was for the valid "purpose of enforcement of laws." (Dkt. No. 21-1, at 10–12). Plaintiff responds

that he has plausibly alleged that his 1997 arrest was "an adverse action taken in retaliation" for

the exercise of his First Amendment right to freedom of association and that the arrest had a

"chilling effect on the exercise of" his right to associate. (Dkt. No. 29, at 22–23).

To state a First Amendment claim, a plaintiff must allege that the defendant's actions

"restricted, or were retaliation against, speech or conduct protected by the First Amendment."

*Salmon v. Blesser*, 802 F.3d 249, 255 (2d Cir. 2015) (citations omitted). The right to "expressive

association" "protects the right of individuals to associate for purposes of engaging in activities

protected by the First Amendment, such as speech, assembly, the exercise of religion, or

---

[9] The Court further notes that, even if Plaintiff had plausibly alleged an ongoing violation of his constitutional rights as required by *Ex Parte Young*, the NYSP and Troop B still would not be proper defendants to sue. *See Tiraco*, 963 F. Supp. 2d at 192–93 ("[A] plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly.").

[10] The Complaint alleges that Superintendent McMahon was employed as Superintendent from 1994 to 2003. (Dkt. No. 1, ¶ 6).

petitioning for the redress of grievances." *Amato v. Elicker*, 534 F. Supp. 3d 196, 208–09 (D.

Conn. 2021) (quoting *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996

(2d Cir. 1997)).[11] The First Amendment "protects conduct only if it has an expressive purpose."

*Salmon*, 802 F.3d at 256.

Here, the Court concludes that Plaintiff has not plausibly alleged that his First

Amendment right to expressive association was restricted or retaliated against because he has not

alleged facts from which it could reasonably be inferred that Plaintiff and Rent-A-Center

associated for the "purpose[] of engaging" in protected activity. *Amato*, 534 F. Supp. 3d at 208–

09. The First Amendment "does not come into play" when an individual "engages in conduct

that does not manifest an intent to convey a particularized message." *United States v. Thompson*,

896 F.3d 155, 164 (2d Cir. 2018) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)) (internal

quotation marks omitted). Here, Plaintiff has not alleged facts suggesting that his conduct in

entering into a Rental Purchase Agreement with Rent-A-Center was "'sufficiently imbued with

elements of communication' to merit constitutional protection." *Amato*, 534 F. Supp. 3d at 209

(quoting *Spence v. Washington*, 418 U.S. 405, 409 (1977)). Rather, Plaintiff's submissions, read

liberally, do not suggest that the Rental Purchase Agreement was anything more than an ordinary

commercial transaction.

Accordingly, the Court grants the State Defendants' motion to dismiss Plaintiff's First

Amendment claim.

---

[11] The Constitution also affords protection to "intimate association," which is not implicated in this case. *Sanitation & Recycling Indus.*, 107 F.3d at 995–96 (noting that the Constitution "does not recognize a generalized right of social association" and that the right "generally will not apply" to business relationships).

### 4.        Fourteenth Amendment Equal Protection Claim

Plaintiff alleges that Defendants violated his Fourteenth Amendment Equal Protection rights because he "was the only person who entered a lawful civil contract and got arrested for such lawful civil contract." (Dkt. No. 1, ¶ 121). The State Defendants move to dismiss Plaintiff's Fourteenth Amendment claim, arguing that Plaintiff has not adequately pled a similarly situated comparator as required to prevail on a "class-of-one" theory. (Dkt. No. 21-1, at 12–14).[12] Plaintiff responds that "Defendant Officers cannot establish" that "anyone but Plaintiff in 1997 was arrested for a lawful entering of a civil contract association with" Rent-A-Center. (Dkt. No. 29, at 11–12).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause therefore "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). A class-of-one Equal Protection claim exists "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To prevail on a class-of-one claim, a plaintiff must show that (1) "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy," and (2) "the similarity

---

[12] The State Defendants also argue that Plaintiff has failed to state an Equal Protection violation based on a theory of selective enforcement. (*See id.*). In his opposition, however, Plaintiff asserts that his Equal Protection claim is premised on a class-of-one theory. (Dkt. No. 29, at 12–13).

in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* (citation omitted).

Here, the Court concludes that Plaintiff has failed to plausibly allege a class-of-one Equal Protection claim because he has not alleged a similarly situated comparator. Class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)); *see also Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. New York*, 336 F. Supp. 3d 50, 76–77 (E.D.N.Y. 2018) (noting that this requirement is the "functional equivalent of showing that a plaintiff and its comparators are '*prima facie* identical'" (citation omitted)). Even accepting as true Plaintiff's allegation that he "was the only person who entered a lawful civil contract and got arrested for such lawful civil contract," (Dkt. No. 1, ¶ 121), Plaintiff has failed to allege facts regarding any comparator, much less one that is "*prima facie* identical" to him. *See 545 Halsey Lane Props., LLC v. Town of Southampton*, 39 F. Supp. 3d 326, 344 (E.D.N.Y. 2014) (noting that a class-of-one plaintiff "must show more than a general similarity between her and the comparator"). Plaintiff would have to allege a particular, similarly situated comparator who, for example, entered into a Rental Purchase Agreement for the same or similar furniture, failed to make required payments and owed a similar amount of money, and failed to return the personal property. *Cf. Camac v. Long Beach City Sch. Dist.*, No. 09-cv-5309, 2011 WL 3030345, at *16, 2011 U.S. Dist. LEXIS 79997, at *47 (E.D.N.Y. July 22, 2011) (dismissing equal protection claim for failure to allege the existence of similarly situated comparators where the complaint simply alleged, in "wholly conclusory fashion," that "similarly situated" students were "not subjected to the same mistreatment").

Accordingly, the Court grants the State Defendants' motion to dismiss Plaintiff's

Fourteenth Amendment Equal Protection claim.

### 5.    False Arrest Claim

Plaintiff asserts a Section 1983 claim for violation of his Fourth Amendment rights and a

second Section 1983 claim for false arrest. (Dkt. No. 1, ¶¶ 104–10 (second claim), 126–34 (fifth

claim)). Both claims are premised, however, on Plaintiff's allegation that he was arrested without

probable cause and are therefore duplicative of each other. *See Weyant v. Okst*, 101 F.3d 845,

852 (2d Cir. 1996) (noting that a Section 1983 claim for false arrest "rest[s] on the Fourth

Amendment right of an individual to be free from unreasonable seizures, including arrest without

probable cause"). The State Defendants argue that Plaintiff's false arrest claim must be dismissed

because probable cause existed to arrest Plaintiff for Misapplication of Property in violation of

Penal Law § 165.00. (Dkt. No. 21-1, at 14–17). Plaintiff responds that no probable cause existed

because "no actual crime was ever committed." (Dkt. No. 29, at 29–30).

A Section 1983 claim for false arrest "is substantially the same as a claim for false arrest

under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). To

state a claim for false arrest under New York law, a plaintiff must allege that (1) "the defendant

intended to confine the plaintiff," (2) "the plaintiff was conscious of the confinement," (3) "the

plaintiff did not consent to the confinement," and (4) "the confinement was not otherwise

privileged." *Gerasimou v. Cillis*, No. 15-cv-6892, 2022 WL 118748, at *3, 2022 U.S. Dist.

LEXIS 6211, at *7 (E.D.N.Y. Jan. 12, 2022) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110,

118 (2d Cir. 1995)). The parties only dispute the last element, as the existence of probable cause

is a "complete defense" to a false arrest claim. *Id.* (citation omitted).

Probable cause to arrest exists when "one has knowledge of, or reasonably trustworthy

information as to, facts and circumstances that are sufficient to warrant a person of reasonable

caution in the belief that an offense has been or is being committed by the person to be arrested."
*Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). "An officer's assessment in this regard need
not 'be perfect' because 'the Fourth Amendment allows for some mistakes on the part of
government officials,' including 'reasonable . . . mistakes of law.'" *United States v. Diaz*, 854
F.3d 197, 203 (2d Cir. 2017) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014)).

The State Defendants argue that NYSP "had sufficient factual support to establish
probable cause" to arrest Plaintiff under Penal Law § 165.00(1)(b) because Plaintiff knowingly
possessed the property pursuant to the Rental Purchase Agreement, Plaintiff intentionally refused
to return the property or make further payments, and Plaintiff failed to return the property after
Rent-A-Center sent a written demand for its return. (Dkt. No. 21-1, at 17). However, the State
Defendants have not provided any response to Plaintiff's assertions in the Complaint that
Plaintiff cannot be subject to criminal prosecution under Penal Law § 165.00(1)(b) for failing to
return personal property held pursuant to a rental purchase agreement. (Dkt. No. 1, ¶¶ 38–46).
Plaintiff argues that "no actual crime was ever committed," (Dkt. No. 29, at 30), and the
Complaint cites caselaw in support of Plaintiff's assertion that Section 165.00(1)(b) does not
apply to rental purchase agreements, *see Sagesse*, 816 N.Y.S.2d 902; *Quinn*, 135 N.Y.S.3d 618.
The Court cannot say as a matter of law that Plaintiff cannot prevail on his false arrest claim
when the State Defendants have failed to even address Plaintiff's argument, supported by
caselaw, as to why there was no probable cause for his arrest.

The Court therefore denies the State Defendants' motion to dismiss Plaintiff's false arrest
claim.

### 6.      Malicious Prosecution Claim

The State Defendants move to dismiss Plaintiff's malicious prosecution claim on the
grounds that Plaintiff does not allege that any State Defendant "maintained control of the

prosecution" of Plaintiff and that Plaintiff has otherwise failed to establish the elements of a malicious prosecution claim. (Dkt. No. 21-1, at 17–21). To state a malicious prosecution claim, a plaintiff must allege that (1) "the defendant commenced or continued to commence a criminal proceeding against him," (2) "the proceeding was terminated in the plaintiff's favor," (3) "there was no probable cause for the proceeding," and (4) "the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) (citations omitted).

Here, Plaintiff has plausibly alleged that Investigator Poirier "commenced" a criminal proceeding against him by signing and filing an Information against him. (*See* Dkt. No. 21-2, at 7). This element may be satisfied by alleging that "the defendant filed formal charges and caused the plaintiff to be arraigned." *Watkins v. Town of Webster*, No. 21-cv-6233, --- F. Supp. 3d ---, 2022 WL 827824, at *8, 2022 U.S. Dist. LEXIS 49237, at *27 (W.D.N.Y. Mar. 17, 2022) (quoting *Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 353 (N.D.N.Y. 2008)); *see also Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994) (finding this element satisfied where the plaintiff alleged that the "Troopers commenced a criminal proceeding against him by formally charging [the plaintiff] with violating the VIN statute and having him arraigned before the town justice"). While the State Defendants argue that a malicious prosecution claim cannot exist against a police officer "once control of the prosecution passes to the prosecuting attorney," (Dkt. No. 21-1, at 18), they have failed to show how that principle applies here. The cases they cite involve situations where a grand jury subsequently indicted an individual, which creates "presumption that [an] arrest and indictment were procured with probable cause," *see, e.g.*, *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994). Here, Plaintiff was not indicted by a grand jury, and these cases are therefore inapposite.

Second, Plaintiff has plausibly alleged that the criminal proceedings terminated in his favor. The Supreme Court recently held that, to demonstrate a favorable termination for purposes of a malicious prosecution claim brought under Section 1983, "a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). A plaintiff is not required to show, as prior Second Circuit authority had held, that the prosecution ended with "some affirmative indication of his innocence." *Id.* at 1336. Here, Plaintiff has alleged that his conviction was vacated, satisfying this element.

As discussed above, on this record, where the Defendant has failed to address Plaintiff's allegations and caselaw concerning the lack of probable cause, the Court cannot say as a matter of law that the Plaintiff could not prove an absence of probable cause. *Supra* Section IV.B.5.

Nor can the Court say, as a matter of law, that Plaintiff has not plausibly alleged that the criminal proceeding was initiated with malice. In this context, malice "does not have to be actual spite or hatred," but rather "means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996). The Court agrees with the State Defendants that Plaintiff's allegations that his arrest was motivated by a "productivity quota for arrests to act as a state-based collection agency" for Rent-A-Center is nothing more than conjecture. (Dkt. No. 21-1, at 20–21 (quoting Dkt. No. 1, ¶ 138)). However, "in most cases, a lack of probable cause—while not dispositive—tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." *Crews v. County of Nassau*, 996 F. Supp. 2d 186, 207–08 (E.D.N.Y. 2014) (internal quotation marks, brackets, and citations omitted)); *see also Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) ("A lack of probable cause generally creates an inference of malice.").

Thus, at this early stage, because Plaintiff has alleged a lack of probable cause, the Court concludes that he has also alleged malice.

The Court therefore denies the State Defendants' motion to dismiss Plaintiff's malicious prosecution claim.

### 7. Section 1985(3) Conspiracy Claim

The State Defendants move to dismiss Plaintiff's claim of conspiracy under 42 U.S.C. § 1985(3), arguing that Plaintiff has not alleged that he is a member of a protected class or that Defendants engaged in any overt acts in furtherance of the alleged conspiracy. (Dkt. No. 21-1, at 21–23). Plaintiff responds that he has "pled [the] minimal showing" required to state a claim. (Dkt. No. 29, at 21–22).

To state a conspiracy claim under Section 1985(3), a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)). Neither the Complaint nor Plaintiff's opposition alleges that Plaintiff is a member of any particular racial or otherwise protected class of persons, and Plaintiff's assertion that he "was a person exerting his First Amendment class right to associate and enter a civil contract, deserving of equal protection," (Dkt. No. 1, ¶ 157), is insufficient to state a claim. There is no "class right" to First Amendment protections, as all individuals enjoy the same First Amendment rights. *See also United Bhd. of Carpenters & Joiners of Am., Local*

*610 v. Scott*, 463 U.S. 825, 838 (1983) (noting that Section 1985(3) does not "reach conspiracies motivated by economic or commercial animus"). Accordingly, because Plaintiff's submissions do not contain any allegations of racial or other class-based animus, the Court grants the State Defendants' motion to dismiss Plaintiff's Section 1985(3) conspiracy claim.

### 8. Negligence Claim

Plaintiff asserts a negligence claim under Section 1983 on the ground that the Defendants "failed to fulfill their duty to demonstrate reasonable care was taken before arresting [Plaintiff] without probable cause." (Dkt. No. 1, ¶¶ 168–175). The State Defendants move to dismiss Plaintiff's negligence claim, arguing that New York courts do not recognize claims for negligence arising out of an arrest or prosecution. (Dkt. No. 21-1, at 23–24). Plaintiff's opposition does not address his negligence claim.

As an initial matter, Section 1983 is not a proper vehicle to bring a negligence claim. *See Busch v. Howard*, No. 20-cv-1515, 2021 WL 2946532, at *6, 2021 U.S. Dist. LEXIS 131385, at *15 (W.D.N.Y. July 14, 2021) (collecting cases); *Poe v. Leonard*, 282 F.3d 123, 145 (2d Cir. 2002) ("[M[ere negligence is insufficient as a matter of law to state a claim under section 1983." (citation omitted)). Moreover, under New York law, "a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citations omitted); *see also Maldonado v. City of New York*, No. 11-cv-3514, 2014 WL 787814, at *12, 2014 U.S. Dist. LEXIS 26239, at *38–39 (S.D.N.Y. Feb. 26, 2014) ("It is well settled that New York courts do not recognize claims for negligent or malicious investigation, or any claim for negligence arising out of an arrest or prosecution." (internal citation and quotation marks omitted)). Accordingly, Plaintiff's negligence claim fails as a matter of law and the Court grants the State Defendants' motion to dismiss this claim.

9.      **Cat's Paw Theory**

Plaintiff asserts a claim based on "cat's paw" theory of liability. (Dkt. No. 1, ¶¶ 176–83 (tenth claim)).[13] The State Defendants argue that Plaintiff cat's paw theory of liability fails to state a claim because the Second Circuit has not held that the theory applies in the context of Section 1983 claims. (Dkt. No. 21-1, at 24). Plaintiff responds that other Circuits have held or assumed that a cat's paw theory of liability is available for Section 1983 claims and that "the matter must be determined at trial." (Dkt. No. 29, at 25).

Under a "cat's paw" theory of liability, "a final decisionmaker that relies entirely on an improperly motivated recommendation from a subordinate may render the municipality liable because the subordinate, although not formally delegated the power to make decisions, acts as the municipality's agent." *Nagle v. Marron*, 663 F.3d 100, 117 (2d Cir. 2011). Although the Second Circuit has held that the cat's paw theory "may be used to support recovery for claims of retaliation in violation of Title VII," *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272–73 (2d Cir. 2016), it has not held that the theory may be used to support recovery for Section 1983 claims. *See Rys v. Grimm*, No. 19-cv-1251, 2021 WL 6277298, at *8, 2021 U.S. Dist. LEXIS 249552, at *23–24 (N.D.N.Y. Aug. 12, 2021) (noting that courts in the Second Circuit "have declined to apply a cat's paw theory to claims arising under Section 1983"); *Krause v. Kelehan*, No. 17-cv-1045, 2018 WL 2021484, at *12, 2018 U.S. Dist. LEXIS 70743, at *34 (N.D.N.Y. Apr. 26, 2018) (same) (collecting cases); *see also Naumovski v. Norris*, 934 F.3d 200, 222 (2d Cir. 2019) (holding that "Section 1983 claims for discrimination in public employment cannot be based on an *respondeat superior* or 'cat's paw' theory to establish a defendant's liability"). The Court therefore concludes that Plaintiff may not use a "cat's paw"

---

[13] The Court notes that the "cat's paw" theory is a theory of liability and not itself a cause of action.

theory of liability to prove his Section 1983 claims. This conclusion is buttressed by the Second

Circuit's decision in *Tangreti v. Bachmann* holding that "there is no special rule for supervisory

liability" and that "a plaintiff must plead and prove 'that each Government-official defendant,

through the official's own individual actions, has violated the Constitution.'" 983 F.3d 609, 618

(2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

Thus, the Court concludes that a "cat's paw" theory of liability is not available to Plaintiff

in proving a defendant's liability on his Section 1983 claims, and the Court therefore dismisses

Plaintiff's standalone "cat's paw theory" claim.

### 10. Fair Trial Claim

Plaintiff asserts a claim for denial of his fair trial rights, alleging that Superintendent

McMahon and Investigator Poirier "fabricated evidence, including but not limited to creating a

false accusatory instrument and attaching demand documents" from Rent-A-Center. (Dkt. No. 1,

¶¶ 184–91). The State Defendants move to dismiss Plaintiff's fair trial claim on the ground that it

is conclusory. (Dkt. No. 21-1, at 25–26).

To state a claim for denial of a fair trial based on fabricated evidence, a plaintiff must

allege that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a

jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a

deprivation of liberty as a result." *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394–95 (S.D.N.Y.

2016) (citing *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012)). The Court

concludes that Plaintiff's conclusory assertion that Defendants "fabricated evidence" including a

"false accusatory instrument" is insufficient to state a claim. Plaintiff does not specify any facts

in the accusatory instrument that are false. The accusatory instrument does not facially contradict

Plaintiff's allegations: it recites the statute, New York Penal Law § 165(1)(b), and the facts set

forth in Rent-A-Center's demand for return of property. (*See* Dkt. No. 21-2, at 7, 9). To the

extent that Plaintiff alleges that Defendants made a *legal* error in the accusatory instrument, that

is not evidence.[14] *See* Black's Law Dictionary, Evidence (11th ed. 2019) (defining evidence as

"[s]omething (including testimony, documents, and tangible objects) that tends to prove or

disprove the existence of an alleged fact; anything presented to the senses and offered to prove

the existence or nonexistence of a fact").

Because Plaintiff does not plausibly allege that Defendants fabricated evidence, the Court

grants the State Defendants' motion to dismiss Plaintiff's fair trial claim.

### 11. Personal Involvement

#### a. Superintendent McMahon

While the State Defendants make a global argument that Plaintiff has failed to allege the

personal involvement of both Superintendent McMahon and Investigator Poirier, their argument

primarily concerns the allegations against Superintendent McMahon. (Dkt. No. 21-1, at 26–27).

They argue that Plaintiff's "conclusory allegations" against Superintendent McMahon are based

only on the fact that Superintendent McMahon was the "direct supervisor" of Investigator Poirier

and that he was a "policymaker." (*Id.*). Plaintiff responds that Superintendent McMahon

"approved of allowing an officer such as Poirier" to draft the accusatory instrument and that he

"authorizes all arrests." (Dkt. No. 29, at 28–29).

It is well-settled that, to establish a defendant's individual liability in a suit brought under

Section 1983, a plaintiff must show "the defendant's personal involvement in the alleged

---

[14] For similar reasons, to the extent Plaintiff asserts a claim for violation of his *Brady* rights, such a claim also fails. A *Brady* violation consists of three components: (1) evidence that is "favorable to the accused, either because it is exculpatory, or because it is impeaching," (2) the evidence is suppressed by the state, either "willfully or inadvertently," and (3) prejudice. *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (citations omitted). Plaintiff's conclusory allegation that Defendants McMahon and Poirier "failed to produce . . . exculpatory information that would have materially benefitted the defense" in violation of *Brady*—without identifying what that evidence was—is insufficient to state a claim. *Cf. Virgil v. Town of Gates*, 455 F. App'x 36, 40–41 (2d Cir. 2012) (summary order) (affirming dismissal due to "conclusory" and "speculative nature" of the plaintiff's "exculpatory-evidence pleading").

constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)

(citations omitted). A plaintiff must "allege a tangible connection between the acts of a defendant

and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). There is "no

special rule for supervisory liability," and "a plaintiff must plead and prove 'that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). Here, there are no

factual allegations to suggest that Superintendent McMahon was involved in any alleged

violation of Plaintiff's constitutional rights beyond the fact that he was a supervisor and

policymaker within the NYSP, and Plaintiff's conclusory allegation that Superintendent

McMahon approved or authorized all arrests is insufficient. The Court agrees with the State

Defendants that Superintendent McMahon's position as a supervisor, without more, is

insufficient to subject him to personal liability on Plaintiff's Section 1983 claims. *Id.*; *see, e.g.*,

*Martin v. Mihalik*, No. 19-cv-7979, 2021 WL 1738458, at \*6, 2021 U.S. Dist. LEXIS 84338, at

\*14 (S.D.N.Y. May 3, 2021) (noting that "the fact that a defendant is a supervisor is not enough

to impute personal involvement onto that actor" (citations omitted)).

Accordingly, the Court grants the State Defendants' motion to dismiss Plaintiff's claims

against Superintendent McMahon for lack of personal involvement.

### b.    Sixth Amendment Right to Counsel

Plaintiff alleges that his Sixth Amendment right to counsel was violated because he made

two court appearances in September 1997 without counsel. (*See* Dkt. No. 1, ¶¶ 33–36, 111–17).

The State Defendants argue that Plaintiff's Sixth Amendment claim fails because he has not

alleged the personal involvement of any of the named Defendants. (Dkt. No. 21-1, at 28).

Plaintiff does not respond to this argument.

The Court agrees with the State Defendants. Plaintiff has not alleged any facts from which it could be inferred that Superintendent McMahon, Investigator Poirier, or any other named defendant had any personal involvement in the alleged denial of his Sixth Amendment right to counsel. Because a plaintiff must establish a defendant's personal involvement in the alleged constitutional deprivation to establish that defendant's individual liability under Section 1983, *Grullon*, 720 F.3d at 138, Plaintiff's Sixth Amendment claim for the denial of his right to counsel must be dismissed.

### 12.   Qualified Immunity

The individual State Defendants argue that they are entitled to qualified immunity with respect to all of Plaintiff's federal claims against them. (Dkt. No. 21-1, at 28–29). However, after reciting the law on qualified immunity, the State Defendants simply argue that they are entitled to qualified immunity because "the Complaint is deficient of facts from which it could be plausibly inferred that a violation of Plaintiff's constitutional rights occurred." (*Id.* at 29). Plaintiff generally responds that the Defendant Officers were aware of his rights under federal law and that he has "pled a clear 1st Amendment violation." (Dkt. No. 29, at 26–28).

Qualified immunity is an affirmative defense on which defendants bear the burden of proof. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013). For a qualified immunity defense asserted in a motion to dismiss to be successful, the "facts supporting the defense [must] appear on the face of the complaint," and the plaintiff "is entitled to all reasonable inferences from the facts alleged . . . that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 434, 436 (2d Cir. 2004) (describing a defendant's burden of establishing a qualified immunity defense in a Rule 12(b)(6) motion as a "formidable hurdle"); *see also Ziemba v. Lynch*, No. 11-cv-974, 2013 WL 5232543, at *9, 2013 U.S. Dist. LEXIS 132540, at *24 (D. Conn. Sept. 17, 2013) (denying motion to dismiss on qualified immunity grounds where the defendant "only include[d] the legal

standard for establishing qualified immunity and, in a conclusory manner, state[d] that the claims . . . are subject to dismissal based on [that] law"). The State Defendants' one-sentence argument fails to demonstrate how they are entitled to qualified immunity at the pleadings stage and, as discussed above, the Court has concluded that Plaintiff has in fact alleged a violation of his constitutional rights.

Accordingly, the Court denies the State Defendants' motion to dismiss on qualified immunity grounds without prejudice to raising the defense at a later time.

### 13.   *Monell* Claim

The State Defendants argue that Plaintiff's *Monell* claim must be dismissed because *Monell* liability does not attach to states, state agencies, or individual defendants sued in their individual capacity. (Dkt. No. 21-1, at 29–30). Plaintiff responds that he has alleged a policy or custom and that Superintendent McMahon "is the head policy maker and the one who authorizes arrests by Defendant Poirier." (Dkt. No. 29, at 24–25).

The Court agrees with the State Defendants. The "holding in *Monell* was limited to local government units which are not considered part of the State for Eleventh Amendment purposes," and therefore does not apply to state agencies such as the NYSP or Troop B. *Daly v. Town of Dewitt*, No. 18-cv-845, 2019 WL 4170162, at *3–4, 2019 U.S. Dist. LEXIS 149328, at *8–9 (N.D.N.Y. Sept. 2, 2019) (dismissing municipal liability claim against NYSP) (brackets omitted); *see also Strasser v. New York*, No. 10-cv-141, 2012 WL 253391, at *3, 2012 U.S. Dist. LEXIS 11802, at *10–11 (N.D.N.Y. Jan. 26, 2012) (adopting magistrate judge's recommendation to dismiss *Monell* claims against the state or its entities, including the NYSP, and noting that *Monell* "provides no basis to permit plaintiff to assert claims against the state or its agencies"). Similarly, *Monell* liability does not attach to an individual state official sued in his or her individual capacity, as Superintendent McMahon and Investigator Poirier are here. *Armory*

35

*v. Katz*, No. 15-cv-1535, 2016 WL 7377091, at *5, 2016 U.S. Dist. LEXIS 175342, at *12 (D.

Conn. Dec. 19, 2016) (citing *Kentucky v. Graham*, 473 U.S. 159, 167–68 (1985)).

Accordingly, the Court grants the State Defendants' motion to dismiss Plaintiff's *Monell*

claim.

## V.   OPPORTUNITY TO AMEND

Ordinarily, a court "should not dismiss" a pro se complaint "without granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999)

(quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2)

("The court should freely give leave when justice so requires."). Any amendment of the official

capacity claims, the negligence claim, or the cat's paw claim would be futile, and Plaintiff is not

granted permission to amend those claims. While it is not at all clear that Plaintiff could amend

the complaint to state a claim with respect to any other claim that the Court has dismissed, in

recognition of Plaintiff's status as a pro se litigant and because it may be possible for Plaintiff to

assert additional cognizable claims with better pleading, Plaintiff is granted leave to seek to

amend. If Plaintiff seeks to file an Amended Complaint, Plaintiff must first file a letter brief,

along with a proposed amended complaint, within twenty-one (21) days of this Order; the letter

brief must detail how the proposed pleading cures the deficiencies the Court has identified.[15]

## VI.   CONCLUSION

For these reasons, it is hereby

---

[15] An amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks and citations omitted)).

**ORDERED** that Rent-A-Center's motion to compel arbitration (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims against Rent-A-Center are **STAYED** pending arbitration; and it is further

**ORDERED** that the New York State Police, New York State Police Troop B, John W. McMahon, and Dana R. Poirier's motion to dismiss (Dkt. No. 21) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that the State Defendants' motion to dismiss is **DENIED** to the extent that Plaintiff's (1) false arrest claim against Investigator Poirier and (2) malicious prosecution claim against Investigator Poirier may proceed; and it is further

**ORDERED** that the State Defendants' motion to dismiss is otherwise **GRANTED**, and the remaining claims against the State Defendants are **DISMISSED without prejudice**; and it is further

**ORDERED** that if Plaintiff seeks to file an amended complaint, Plaintiff must first file a letter brief along with a proposed amended complaint within twenty-one (21) days of this Order, detailing how the proposed pleading cures the deficiencies the Court has identified. The State Defendants may file a response within fourteen (14) days of Plaintiff's submission. The Court will hold a conference to discuss the proposed pleading, if necessary; and it is further

**ORDERED** that the Clerk of the Court is directed to serve this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>June 6, 2022</u>
      Syracuse, New York

Brenda K. Sannes
U.S. District Judge